FILED
JAMES J. VILT, JR. - CLERK
NOV - 4 2026
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

Bryce Bruenderman
*Plaintiff*

v.

Louisville Metro Government
D/B/A Louisville Metro Police Department,

John Does, in their official and individual capacities

*Defendants*

3:26CV-910-RGJ

---

## COMPLAINT

The Plaintiff, Bryce Bruenderman (*"Plaintiff"),* Pro se, for his Complaint against Defendants, Louisville Metro Government D/B/A Louisville Metro Police Department, and John Does (*"Defendants"*), states as follows:

## INTRODUCTION

1. This is an action for compensatory damages and injunctive relief brought pursuant to 42 U.S.C. §§ 1983 and 1988 the Fourth and Fourteenth Amendments to the United States Constitution, and under the law of the State of Kentucky, against Louisville Metro Government d/b/a Louisville Metro Police Department.

2. The Plaintiff, Bryce Bruenderman alleges the Defendants eavesdropped on him while he was employed by the Census Bureau in 2020, and in two separate apartment complexes; then disclosed information obtained while eavesdropping on him to a third party. The Plaintiff also alleges the Defendants used a network of ALPR cameras to track his movements throughout the city of Louisville.

3. The Plaintiff alleges the Defendants infiltrated two apartment complexes where he was living, and disparaged him to his landlords, as well as other tenants in the buildings, and engaged in harassment of the Plaintiff, among other things. The Defendants used his residences as nothing more than a means to target him repeatedly, and to eavesdrop on him, which was discovered by the Plaintiff

in January of 2026, a few months after he wrote a letter to the Professional Standards Unit of the LMPD. The actions of the Defendants deprived the Plaintiff of an equal opportunity of upward mobility, as well as his right to privacy and security inside his home. The Defendants do not have a right to be involved in the Plaintiff's life.

4. The circumstances created by the Defendants made it impossible for the Plaintiff to have an equal opportunity at success, and created circumstances that violated the Plaintiffs Constitutional rights. In short, the Defendants are simply not allowing the Plaintiff to live his life the way another person would be able to. They are essentially interfering and sabotaging the Plaintiff's life, and unfortunately getting paid for it.

5. The Plaintiff also alleges that beginning in February of 2021; the Defendants started stalking him, and used a large network of women to approach him for nefarious reasons, and to gather information about him which intruded upon his privacy. This is apparently a popular trend within certain police departments, and in the LMPD it is rampant within smaller groups of cops that don't generally wear uniforms or drive marked cars, they typically operate within smaller groups away from other cops.

6. The Plaintiff alleges this type of egregious behavior, and these constitutional violations were committed as a result of a culture within the LMPD that lacks accountability, and that the Defendants are liable for these violations as well as other torts and crimes committed by the Defendants.

7. The Plaintiff is not involved in anything illegal, and there is no law enforcement rationale for any actions by the Defendants that are described in this complaint. The Plaintiff believes the Defendants are turning the legal system on its head, meaning they've found a person, now there looking for a crime. However, what they are doing is illegal and this is about the most awful thing you can do to somebody. The Plaintiff's life is anything but ordinary, but that doesn't mean he's doing anything wrong.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over the Plaintiff's cause of action arising under the Constitution of the United States and 42 U.S.C. § 1983 and pursuant to the Declaratory Judgement Act, 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over the plaintiff's causes of action arising under Kentucky state law pursuant to 28 U.S.C. § 1367.

9. Venue lies in this court pursuant to 28 U.S.C. § 1391(b) and (e)(1), because the actions giving rise to this complaint occurred in Jefferson County, KY, and all parties involved are located in Jefferson County, Kentucky.

## PARTIES

10. The Plaintiff, Bryce Bruenderman is a resident of Jefferson County, KY and was at all times relevant hereto.

11. The Defendants Louisville Metro Government d/a/b Louisville Metro Police department ("LMPD") is a police department located in Jefferson County, KY.

12. When the Plaintiff is using the words Defendants, LMPD, or John Does he is referring to various police officers who work for the Defendants that are involved in this matter. It's impossible for the Plaintiff to have their names because they are doing everything anonymously.

## FACTS AND BACKGROUND

13. The Plaintiff was hired to work the 2020 Census as an Enumerator, which is someone who goes around the city to various addresses asking basic questions to residents in the community, and inputs their responses into an IPhone.

14. The Census is run through the Department of Commerce, which is a branch of the Federal Government; however Louisville Metro Government played a huge role in the 2020 Census that was conducted in Jefferson County, KY.

15. A few weeks before training was set to begin, the Plaintiff received a call on his cell phone from the Defendants who informed him he could start working early, which Plaintiff agreed to do.

16. The Plaintiff was given directions to a rundown building in the west end of Louisville to go for orientation, which was different than the location Plaintiff was originally given at Indiana Wesleyan University on the east end of town.

17. During orientation the Plaintiff was given an IPhone, which is what the enumerators were going to use to input data while working. To the best of the Plaintiff's knowledge the IPhone was given to him by the Defendants.

18. The Plaintiff was told to never turn the phone off, and to keep it with him at all times.

19. The Plaintiff worked for the Census Bureau as an enumerator for a period of 6 weeks, and during this time the Defendants remotely accessed the IPhone the Plaintiff was given.

20. The Defendants accessed the microphone, and used it to listen to and/or record the Plaintiff without his knowledge or consent, which included conversations the Plaintiff had on his personal cell phone, and anything else that was said out loud anywhere near the IPhone.

21. The Defendants also accessed the Camera on the IPhone, and used it to record video inside the Plaintiff's home, or wherever the camera was pointed, without his knowledge or consent.

22. The Defendants also used the IPhone to track the Plaintiff everywhere he went for a period of 6 weeks, without his knowledge or consent.

23. During the 6 weeks the Plaintiff was employed by the Census Bureau, the Defendants engaged in stalking, harassing, and menacing behavior among other things.

24. For the most part everything the Defendants did that involved the Plaintiff was contrary to what you would expect from police officers.

25. After the Census was over, the Defendants continued to stalk the Plaintiff, and engage in harassing and menacing behavior.

### *Stalking by the Defendant after the Census has ended*

26. The Plaintiff alleges that in February of 2021, a few months after the Census ended, the Defendants started giving a description of him and the vehicle he drives to a large number of women in Louisville with the instructions to approach him for nefarious reasons.

27. The women that are being used by the Defendants to approach the Plaintiff for nefarious reasons start showing up all over town at various businesses in Louisville, KY. It becomes very obvious what is going on. One of these women was a medical assistant for a Doctor the Plaintiff visited.

### *Defendants infiltrate apartment buildings*

28. The Plaintiff alleges that in August of 2023, the Defendants infiltrated a 4plex where the Plaintiff was living on Deerwood Ave. in Louisville, KY, and secretly lived in what Plaintiff thought was a vacant apartment.

29. While secretly living in the apartment, the Defendants eavesdropped on the Plaintiff for a period of about two months.

30. The Plaintiff also alleges the Defendants disparaged him to other tenants in the building, as well as his neighbors, and coaxed other tenants into harassing him and eavesdropping on him as well.

31. The Plaintiff also alleges the Defendants conspired with other tenants in the building to try and get Plaintiff to commit crimes so they could arrest the Plaintiff, even though he had done nothing wrong, and is not involved in anything illegal.

32. The Defendants coaxed a tenant in the building into committing acts of indecent exposure, in an attempt to harass and arrest him, which like most everything else in this complaint is incomprehensible, and contrary to what you would expect from police officers. This was done while the Plaintiff was walking up the back steps to his apartment.

33. At this same apartment, the Defendants tried on three separate occasions, three different ways to get the Plaintiff to enter an apartment he thought was vacant that was occupied by the Defendants. Obviously, this was done with malicious intent, and to the best of Plaintiff's knowledge the Defendants could have legally killed, assaulted, or arrested the Plaintiff if he entered the apartment.

34. The Defendants also attempted to get the Plaintiff to open packages and mail that did not belong to him at his address on Deerwood Ave.

35. In November of 2023, the Plaintiff moved out of the 4Plex on Deerwood Ave. and into another 4Plex on Stilz Ave. in Louisville, KY.

36. Prior to the Plaintiff moving, the Defendants were informed of the address where he was moving to, and was able to infiltrate that apartment building as well. When the Plaintiff moved in the Defendants were already living next door in what the Plaintiff thought was a vacant apartment.

37. The Defendants used this apartment to eavesdrop on the Plaintiff for a period of about four months in 2023 and 2024.

38. At this address the Defendants repeatedly put packages in front of the Plaintiff's door that were not his. This was obviously done for the purpose of arresting the Plaintiff, just like at the last apartment. They did this via his mailbox as well.

39. The Defendants had the cell phone numbers of his Landlords, and at least 4 tenants in these apartment buildings and to the best of the Plaintiff's knowledge they had the cell phone numbers of the other tenants as well.

40. In the new apartment the Plaintiff was living in, the Defendants disparaged him to other tenants in the building, and conspired with them to arrest the Plaintiff, just like at his last apartment. They are basically engaging in childish gossip every chance they get.

41. About two months after the Plaintiff moved into his new apartment, the Defendants were brazen enough to use the tenant above him to try and coax the Plaintiff into entering an apartment occupied by the Defendants that he thought was vacant.

42. The Defendants did this by repeatedly and intentionally setting off a fire alarm in the apartment next door, knowing this would prompt the Plaintiff to vacate his apartment.

43. After the Plaintiff left his apartment they tried to get him to check on the situation by entering the apartment using a key that was next to the door. This was obviously done with malicious intent, so that the Defendants could arrest, assault, or kill the Plaintiff after he entered the apartment.

44. To the best of the Plaintiff's knowledge, the Defendants coaxed everyone in the 4Plex into working with them in some capacity in ways that were detrimental to the Plaintiff.

45. Several times when the Plaintiff would enter his apartment at night, the Defendants used a female tenant who lived upstairs to try to arrest Plaintiff for looking into her windows which is absurd. The Defendants are obsessed with arresting the Plaintiff.

46. According to the Fourth Amendment to the Constitution, the Plaintiff has a right to privacy and security inside his home, as well as a fundamental right to feel safe at home, and be free from violence, harassment, or fear. The Defendant's actions clearly violated the Constitutional rights of the Plaintiff.

47. Upon information and belief, the Louisville police officers who eavesdropped on the Plaintiff during the 2020 Census were involved in infiltrating these apartment buildings, which is extremely disturbing.

### *Plaintiff moves back home*

48. In November of 2024 the Plaintiff moved back home to live with his parents who live on the east end of town.

49. The Defendants continued to stalk the Plaintiff, engage in menacing behavior, and use women in the manner that is described in this complaint, and this continues today.

### *ALPR Cameras are installed throughout the city of Louisville*

50. About the same time the Plaintiff moved back home the Defendants blanketed the city with ALPR Cameras. Flock cameras are the most popular brand of ALPR camera, and this is what is used by the LMPD.

51. The Plaintiff alleges the Defendants used Flock cameras, to track his movements throughout the city which violated his constitutional rights.

52. Flock cameras work by taking a picture of a vehicle with a high speed camera when it passes by the camera. This picture is loaded into a database and it records the location of the vehicle, as well as the time and date. This information can be accessed by anyone logged into the Flock camera system.

53. In short, Flock cameras serve the exact same purpose as GPS tracking devices on everyone's car. It's different technology because nothing is physically attached to the vehicle, but it does the exact same thing. If you drive a car every police officer on the force can track you in over 5,000 communities, along with Flock safety, and anyone else who has log in credentials.

## INJURY TO PLAINTIFF

54. The Defendants eavesdropped on the Plaintiff in two separate apartments where the Plaintiff lived; furthermore the Defendants disclosed information obtained through eavesdropping which was discovered in August of 2026. The Defendants also disparaged the Plaintiff to other tenants in the building he lived in.

55. The Defendants also engaged in harassing behavior among other things, and used a network of ALPR cameras to track the Plaintiff everywhere he went in his vehicle which violated his constitutional rights.

56. Being under constant government surveillance has taken a huge toll on the Plaintiff that can't be put into words. The Plaintiff is extremely mobile so mass surveillance, ALPR cameras, and other invasions of privacy have basically destroyed his life.

57. Because of the Defendants malicious and selfish actions, the Defendants have caused the Plaintiff significant injury, including, but not limited to:

a: Violation of his Constitutional rights under the Fourth Amendment to the United States Constitution.

b: Having to live life knowing the people involved in the eavesdropping described in this complaint, have already used information they collected to damage him at least once, and can continue to do this in the future.

c: Spending years living with the stress and mental suffering caused by stalking and being targeted repeatedly.

d: Severe emotional distress from eavesdropping by the Defendants; which includes but is not limited to severe anxiety, loss of enjoyment of life, humiliation, anger, and psychological pain.

E: Fear of imminent danger, resulting from persistent attempts by the Defendants to injure or damage Plaintiff at his home.

F: The Plaintiff is now hypervigilant, and has a chronic loss of safety.

g: Because of the actions of the Defendants, the Plaintiff has lost his trust in government and law-enforcement officers.

58. At all relevant times, the Defendant Louisville Metro Government d/b/a Louisville Metro Police Department was acting under color of law and under the color as police officers, employees, and agents or servants of Louisville Metro Government.

## COUNT I

***42 U.S.C. § 1983 Against John Doe Defendants***

59. The Plaintiff re-alleges and incorporates by reference ¶¶ 1-58 as if fully stated here.

60. The Plaintiff claims damages under 42 U.S.C. § 1983 for the injuries set forth above against the defendant Louisville Metro Government d/b/a Louisville Metro Police Department for violation of his constitutional rights under color of law.

## COUNT II

***INTENTIONAL OR NEGLEGENT INFLICTION OF EMOTIONAL DISTRESS Against John Doe Defendants***

61. The Plaintiff re-alleges and incorporates by reference ¶¶ 1-60 as if fully stated here.

62. The Defendants conduct was outrageous and intolerable and would be considered highly offensive to generally acceptable standards of morality and decency.

63. The Defendants engaged in psychological harassment of the Plaintiff as well as other forms of harassment, by working through and manipulating tenants that lived in these apartments who they gave their cell phone numbers to.

## COUNT III

***INVASION OF PRIVACY Against John Doe Defendants***

64. The Plaintiff re-alleges and incorporates by reference ¶¶ 1-63 as if fully stated here.

## COUNT IV

***Interception of wire, oral, or electronic communications, a violation of 18 U.S. Code § 2511(1)(a) Against John Doe Defendants***

65. The Plaintiff re-alleges and incorporates by reference ¶¶ 1-64 as if fully stated here.

66. The Defendants eavesdropped on The Plaintiff using surveillance equipment to listen to and/or record everything that was said in the Plaintiff's apartments on Deerwood and Stilz Ave. For all intents and purposes they bugged his apartment.

## COUNT V

***Interception of wire, oral, or electronic communications, a violation of 18 U.S. Code § 2511(1)(b) Against John Doe Defendants***

67. The Plaintiff re-alleges and incorporates by reference ¶¶ 1-66 as if fully stated here.

68. The Defendants coaxed tenants in these apartment buildings into intercepting Oral Communications from inside the Plaintiff's apartment using an electronic device.

## COUNT VI

***Interception of wire, oral, or electronic communications, a violation of 18 U.S. Code § 2511(1)(c) Against John Doe Defendants***

69. The Plaintiff re-alleges and incorporates by reference ¶¶ 1-68 as if fully stated here.

70. The Defendants disclosed the contents of wire, oral, or electronic communication by the Plaintiff after his employment with the Census Bureau ended, and from eavesdropping on him in both of his apartments.

## COUNT VII

***42 U.S.C. § 1983 Against Defendants Louisville Metro Government d/b/a Louisville Metro Police Department***

**Fourth Amendment Violation**

71. The Plaintiff re-alleges and incorporates by reference ¶¶ 1-70 as if fully stated here.

72. 42 U.S.C. § 1983 provides a cause of action for the deprivation of rights secured by the Fourth Amendment.

73. The Fourth Amendment guarantees people a reasonable expectation of privacy in their homes, and also gives citizens a right to be safe and secure in our homes. The Defendant's used powerful surveillance equipment inside both of these apartments to listen to and record everything that was said inside the Plaintiff's apartment. This is warrantless surveillance by the Defendants with equipment they can't even use legally, which of course means they shouldn't have it in the first place.

74. The actions of the Defendants in these apartment buildings placed the Plaintiff in imminent danger, eavesdropping is a felony under both state and federal law for a reason.

75. The Defendants Louisville Metro Government d/b/a Louisville Metro Police Department developed and maintained polices or customs exhibiting deliberate indifference to the constitutional rights of people in the city of Louisville, KY which caused the Plaintiff's constitutional rights to be violated.

76. It was the policy or custom to fail to exercise reasonable care in hiring its police officers, including John Does. By doing this they failed to adequately prevent Constitutional violations by its police officers.

77. It was the policy or custom to inadequately train, supervise, and retain its police officers, including John Does. Because of these policies or customs they failed to adequately discourage constitutional violations by its police officers.

78. As a result of these polices or customs of the Louisville Metro Police Department, the Defendants didn't think their actions would be monitored by supervisors, and that their misconduct would not only not be investigated, but would be tolerated, and so far they've been right.

79. The policies described above demonstrate a deliberate indifference by Louisville Metro Government to the constitutional rights of people in Louisville, KY, and were the cause of the violations of the Plaintiff's rights alleged herein.

## COUNT VIII

***Negligent Training, Supervision, and Retention of Other Official and Individual Capacity Defendants or Respondent Superior of Louisville Metro Government d/b/a Louisville Metro Police Department***

80. The Plaintiff re-alleges and incorporates by reference ¶¶ 1-79 as if fully stated here.

81. The Defendants Louisville Metro Government d/b/a Louisville Metro Police Department are liable for the Federal Crimes that were committed against the Plaintiff as well as other state torts

committed by John Doe Police Officers. Louisville Metro Government employed the officers who committed these crimes while acting in the scope of their employment.

## COUNT IX

### *42 U.S.C. § 1983 Against Defendants Louisville Metro Government d/b/a Louisville Metro Police Department*

### Fourteenth Amendment Violation

82. The Plaintiff re-alleges and incorporates by reference ¶¶ 1-81 as if fully stated here.

83. 42 U.S.C. § 1983 provides a cause of action for the deprivation of rights secured by the Fourteenth Amendment.

84. The Fourteenth Amendment provides citizens with unalienable rights, such as "life, liberty, and the pursuit of happiness," as stated in the Declaration of Independence.

85. The whole point of everything the Defendants did in these apartments was to disrupt the Plaintiff's life, to damage him, and to invade the Plaintiff's privacy and they did exactly that.

86. The Plaintiff has the right to live and exist just like anyone else. It's embarrassing the Plaintiff has to say that, however the Defendants think they can do anything they want.

87. The Defendant's worked with tenants in Apt. 1 on Deerwood Ave. to engage in psychological harassment of the Plaintiff, among other things. The Defendants insulated themselves and worked through other tenants by manipulating and coercing them.

88. There are a lot of things the Defendants are suspected of doing that are not mentioned in this lawsuit that would be better suited for deposition. It's important to point out that someone paid thousands of dollars in rent for the Defendants to live in these apartments; they went through the trouble of moving furniture in and out of these apartments and made sure all of this went unnoticed, they're going to get their money's worth. They even stole the Plaintiff's trash before he moved out, which is a testament to how dedicated they are to damaging the Plaintiff.

89. The tenant who lived above the Plaintiff in the apartment on Stilz ave. was paid a lot of money by the Defendants to participate in all of this, and keep his mouth shut. He didn't want to be a part of any of this; however the defendants manipulated and intimidated him.

90. The Plaintiff has the right to seek personal fulfillment and well-being, the actions of the Defendants clearly deprived him of that. No one should have to live under the circumstances created by the Defendant. The actions of the Defendants are absolutely unheard of for police officers.

## COUNT X

***42 U.S.C. § 1983 Against Defendants Louisville Metro Government d/b/a Louisville Metro Police Department***

**Fourth Amendment Violation**

*Unreasonable search*

91. The Plaintiff re-alleges and incorporates by reference ¶¶ 1-90 as if fully stated here.

92. The Fourth Amendment to the U.S. Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures."

93. The Fourth Amendment requires a warrant to do a search unless an exception applies.

94. The Fourth Amendment applies to both state and local governments through the Fourth Amendments Due Process Clause.

95. The Defendants using Flock Cameras to access the Plaintiff's location counts as a search, and is considered warrantless surveillance.

96. In October of 2026 in United States of America v. Melisa Susan Kyle U.S. District Judge Sara E. Hill ruled that using Flock cameras was an "unconstitutional and warrantless search" and therefore a violation of her Fourth Amendment right to privacy.

97. The Defendants have a policy or custom of opening investigations into people without probable cause or any level of individualized suspicion, which allows them to track people's movements using Flock cameras.

98. The Defendants have a policy or custom of allowing their officers to access data from the Flock cameras without a warrant.

99. The Defendants have a policy or custom of being unprofessional and disorganized which extends to using Flock cameras. For example in 2025 a Louisville police officer gave his Flock camera log

in credentials out to someone who was not even on the police force. This allowed him to log in and track people in more than five thousand communities.

100. The Defendants have a policy or custom of providing every police officer with access to Flocks database.

101. The Defendants have a policy or custom of not requiring probable cause, or any level of suspicion to download information from Flocks database.

102. No exception to the Fourth Amendment's warrant requirements justifies the use of Flock cameras or the surveillance of the Plaintiff's movements using Flock cameras.

## PRAYER FOR RELIEF

**WHEREFORE,** The Plaintiff, Bryce Bruenderman respectfully requests that the court issue judgement against the defendants as follows:

a. Enter judgement in favor of Plaintiff against the Defendants;
b. Enter an order declaring the Defendants conduct Unconstitutional;
c. Award Plaintiff Compensatory damages;
d. Punitive damages in an amount sufficient to punish the Defendants for their willful, wanton, oppressive, malicious, and grossly negligent conduct;
e. Ordering the Defendants to delete all audio recordings Defendant collected while eavesdropping on Plaintiff;
f. Any and all relief which Plaintiff may be properly entitled.
g. Reasonable attorney fees should the Plaintiff retain an Attorney.

## JURY TRIAL DEMAND

The Plaintiff demands a jury trial, pursuant to the Seventh Amendment of the Constitution of the United States, as to all claims for damages.

Respectfully submitted,

Bryce Bruenderman, Pro Se
3044 Bardstown Rd. # 146
Louisville, KY 40205
502-494-0299
brycesmail@icloud.com

## VERIFICATION

I, Bryce Bruenderman have investigated all allegations in the preceding complaint, and I can say without question they are true.